# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DATASCOPE ANALYTICS, LLC, HANSEN IP LAW, PLLC, and ROBBIE SIMMONS, individually and on behalf of a class of similarly situated entities,<br><br>                              Plaintiffs,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, INC.,<br><br><br>                              Defendant | Civil Action No. _____<br><br><br>**COMPLAINT – CLASS ACTION** |

This is a class action brought by Plaintiffs Datascope Analytics LLC, Hansen IP Law, PLLC, and Robbie Simmons ("Plaintiffs"), individually and on behalf of themselves and all other Comcast Business Class Service Customers ("Business Class Customers").  Defendant, Comcast Cable Communications, Inc., ("Comcast") charges its Business Class Customers fees contrary to their Agreements with Comcast.  These fees include an "early termination fee" ("ETF") when cancelling or attempting to cancel and/or disconnect Comcast services after fulfilling the specified Service Terms set forth in their Service Order.  Comcast also charged some of its Business Class Customers, including Plaintiff Simmons, internet equipment fees in excess of the costs specified in their Service Order (hereafter, "Equipment Fee Class.")  All Plaintiffs allege the following against Comcast, based upon personal knowledge, information and belief, and their counsels' investigation and research:

## SUMMARY OF ACTION

1.      Comcast is the provider of a variety of cable, internet, and telephone services, including its Business Class internet and telephone services ("Business Class Services"). Comcast advertises, markets, and sells television, internet, and phone services to residential and commercial consumers throughout the United States, including, but not limited to, installation, activation, and delivery of Comcast television, phone, and internet equipment.

2.      Comcast's Business Class Services are offered for consumers and businesses that require more bandwidth for their internet and numerous phone lines, among other services.

3.      At the time they are connected with Business Class Services, Business Class Customers must sign a Service Order Agreement ("SOA"). The SOA is a form created by Comcast.  The SOA sets out, among other things, a) the services requested (which may include video, voice and/or internet service); b) the date service is to begin and end; c) the location of service; d) the charges for service and equipment; and e) the responsibilities of the parties under the Service Order Agreement. The SOA refers the customer to a separate document, the Comcast Business Class Terms and Conditions ("Terms and Conditions" or "T&C"). The date the service is to begin and the length of the service is defined as the "Service Term" in the Terms and Conditions.  That document is not signed or presented to the customer at signing.  According to the SOA, the SOA, the Terms and Conditions, and any jointly executed written amendments the parties agree to, constitute the "Agreement" between Comcast and the Business Class Customers.

4.      Comcast charges many of its Business Class Customers an "Internet Equipment Fee" as part of their Business Class Internet services. The amount of the Internet Equipment Fee is established in the Service Order Agreement.

5. Comcast includes in its Terms and Conditions an early termination fee for customers who do not finish their Service Terms.  The Terms and Conditions provide that if a Business Class Customer terminates her service without cause before the end of his or her Service Term, Comcast will impose an ETF of seventy-five percent (75%) of the remaining monthly fees that would have been payable by the customer under the Service Order if the Service Term had been completed.

6. At the end of the Service Term, Comcast can "auto-renew" its Business Class Customers for an additional term of one (1) year, which Comcast's T&C calls a "Renewal Term."  While not allotted for in the SOA or Terms and Conditions, Comcast has imposed or threatened to impose an ETF of 75% of the remaining balance on the Renewal Term on Business Class Customers who have been auto-renewed, but wish to terminate their Business Class Services.

7. Under the SOA and the Terms and Conditions, Comcast may only impose an ETF if a Business Class Customer cancels service prior to the end of the Service Term set out in a SOA that the customer signed.

8. As such, Comcast has repeatedly breached its contracts with its Business Class Customers by imposing an ETF on customers who attempted to cancel their Business Class Services after fulfilling their Service Term, when Comcast had auto-renewed their Agreement, without the execution of a new SOA.

9. Furthermore, in or around December 2011, Comcast unilaterally increased the equipment fees for voice and internet service.  The equipment fees became $7.00 per month for Business Class internet and voice customers.  For some customers, this amounted to an increase of $2.00 a month from the $5.00 fee specified in the SOA, or a $7.00 charge.  Other customers

had not previously had any internet equipment fee on their SOAs, and were subjected to a new charge of $7.00 on their monthly Business Class billing invoices starting in December 2011. Comcast did not seek nor obtain a jointly executed amendment to the SOA to permit these new costs.  As such, this cost increase for the internet equipment fees – imposed during the agreed to Service Term in an SOA - violated customers' contracts with Comcast.

10.     Plaintiffs, on behalf of themselves and the proposed Nationwide Class (or, in the alternative, Individual State Classes) as defined herein, bring this action for violation of state common law, and for Declaratory Relief under 22 U.S.C §§ 2201, *et. seq*. Plaintiffs seek compensatory and punitive damages, restitution, and injunctive and declaratory relief as set forth herein.

## PARTIES

11.     Defendant Comcast Cable Communications, Inc. provides high-speed internet and telephone services in the United States and provides modems and other equipment needed to access those services. Comcast is a citizen of Pennsylvania, and maintains its headquarters in Philadelphia, Pennsylvania.

12.     Plaintiff Datascope Analytics LLC ("Datascope"), is an Illinois Limited Liability Corporation that has had its headquarters in Chicago, Illinois during all relevant times.

13.     Plaintiff Hansen IP Law, PLLC, ("Hansen IP") is a Michigan company and has had its central business in Waterford, Michigan during all relevant times.

14.     Plaintiff Robbie Simmons ("Simmons") is a citizen of Muncie, Indiana and has resided in Indiana during all relevant times.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the Defendants because they maintain their

principal headquarters in Pennsylvania, are actively doing business and do sufficient business in

Pennsylvania, have sufficient minimum contacts in Pennsylvania, or otherwise intentionally avail

themselves of the markets within Pennsylvania, through promotion, sale, marketing, and

distribution of their services in Pennsylvania, to render the exercise of jurisdiction by this Court

proper and necessary.

16.     This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of

diverse citizenship from Defendant; there are more than 100 Class members nationwide; and the

aggregate amount in controversy exceeds $5,000,000.

17.     Venue is proper in this Eastern District of Pennsylvania pursuant to 28 U.S.C. §

1391 because Defendants conduct substantial business in this District, maintain their principal

headquarters in this District, or otherwise have sufficient contacts with this District to justify

them being fairly brought into court in this District.


## COMMON FACTUAL ALLEGATIONS

The Comcast Business Class Services Agreement

18.     In order to receive Comcast Business Class services, customers must sign a

contract, created by Comcast, called the "Business Class Service Order Agreement" (hereafter

"SOA.")

19.     The SOA sets out the individual customer's pricing plan, the costs for services –

including any equipment charges – and the duration of the agreement.  The SOA permits

amendments to the SOA only by jointly executed documents by both parties.  SOA Provision 6

states that:

> All modifications to the Agreement, if any, must be captured in a written
> Amendment, executed by an authorized Comcast Senior Vice President and the
> Customer. All other attempts to modify the Agreement shall be void and non-
> binding on Comcast . . .

20.     The Terms and Conditions, incorporated into the SOA by reference in SOA

Provision 6, include a number of relevant definitions. These definitions include:

> **Agreement:**   [The] terms and conditions and the Service Order
> Agreement executed by Customer.
>
> ***
>
> **Service Order:** A request for Comcast to provide the Services to
> Service Location(s) submitted by Customer to Comcast (a) on a
> then-current Comcast form designated for that purpose or (b) if
> available, through a Comcast electronic order processing system
> designated for that purpose.
>
> **Service Order Agreement**: The agreement under which all
> Service Orders are submitted to Comcast.
>
> **Service Term:** The duration of time (commencing on the Service
> Commencement Date) for which Services are ordered, ***as specified
> in a Service Order.***
>
> **Termination Charges:**  Charges that may be imposed by Comcast
> if, ***prior to the end of the applicable Service Term*** . . . Customer
> terminates Services without cause. Termination Charges with
> respect to each terminated Service Order shall equal, in addition to
> all amounts payable by Customer in accordance with Section 5.3,
> seventy-five percent (75%) of the remaining monthly fees that
> would have been payable by Customer under the Service Order if
> the Services described in the Service Order had been provided until
> the end of the Service Term ...[1]

---

[1]  *See, e.g.,* "Business Services Customer Terms and Conditions", Effective June 11,
2012, as seen at http://business.comcast.com/docs/smb-
pdfs/bus_svcs_tcs_ver18_published_120607.pdf?sfvrsn=0, on Nov. 16, 2012.

(emphasis added)

21.     The T&C also include a number of relevant provisions.  The Terms and

Conditions ("T&C") in effect when Plaintiff Datascope executed its SOA in 2010 stated:

> **2.5. <u>Comcast Equipment.</u>** … Comcast shall maintain Comcast
> Equipment in good operating condition during the term of this
> Agreement; provided, however, that such maintenance shall be at
> Comcast's expense only to the extent that it is related to and/or
> resulting from the ordinary and proper use of the Comcast
> Equipment.
>
> ***
>
> **3.1 <u>Charges.</u>** ... Customer ... agrees to pay all charges associated
> with the Services, as set forth or referenced in the applicable
> Service Order(s) ... [including] ... monthly recurring service
> charges, usage charges including without limitation charges for the
> use of Comcast Equipment .... Except as otherwise indicated herein
> or on the applicable Service Order(s), monthly recurring charges
> for Video and Internet Services shall not increase during the initial
> Service Term. Except as otherwise indicated herein or
> on the applicable Service Order(s), Voice Service pricing lists with
> information on charges and fees can be found at
> http://www.comcast.com/corporate/about/phonetermsofservice/co
> mcastdigitalvoice/cdvbusiness.html
>
> ***
>
> **4.1 <u>Agreement Term.</u>** This Agreement shall terminate upon the
> expiration or other termination of the final existing Service Order
> entered into under this Agreement. The term of a Service Order
> shall commence on the Service Commencement Date and shall
> terminate at the end of the state Service Term of such Service..
>
> **4.2 <u>Service Order Renewal.</u>** Upon the expiration of the Service
> Term, this Agreement and each applicable Service Order shall
> automatically renew for successive periods of one (1) year each
> ("Renewal Term(s)"), unless otherwise stated in these terms and
> conditions or prior notice of non-renewal is delivered by either
> Party to the other at least thirty (30) days before the expiration of
> the Service Term or the then current Renewal Term. Effective at
> any time ***after the end of the initial Service Term*** and from time to
> time thereafter, Comcast may, modify the charges for Internet
> and/or Video Services subject to thirty (30) days prior notice to

7

Customer. Customer will have thirty (30) days from receipt of such
notice to cancel the applicable Service without further liability.
Should Customer fail to cancel within this timeframe, Customer
will be deemed to have accepted the modified Service pricing.[2]

(emphasis added)

22.     While these Terms and Conditions have been modified numerous times by

Comcast, none of these modifications are material to the claims made herein.

Comcast Cannot Impose an ETF Upon a Customer Who Has Fulfilled his Service Term

23.     All Plaintiffs are Comcast Business Class Customers who completed their Service

Term, and were then auto-renewed by Comcast into a one-year Renewal Term.

24.     The Comcast Agreement limits Comcast's ability to charge an early termination

fees.  To wit:

- "Termination Charges," are defined as "[c]harges that may be imposed by

  Comcast if, ***prior to the end of the applicable Service Term*** ... Customer

  terminates Services without cause."

- The "Service Term" is defined as the time period "for which Services are

  ordered, as specified in a Service Order."

- The "Service Order" is defined in a very limited and narrow manner as,

  "A request for Comcast to provide the Services to Service Location(s)

  submitted by Customer to Comcast (a) on a then-current Comcast form

---

[2] See "Business Services Customers Terms of Conditions", as seen at
http://business.comcast.com/docs/smb-pdfs/cbc_terms_102610.pdf?sfvrsn=0, on November 16,
2012 (emphasis added). The T&C also includes a provision that, "The domestic law of the state
in which the Services are provided shall govern the construction, interpretation, and performance
of this Agreement, except to the extent superseded by federal law." *Id*. at 13.9. As noted herein,
the absence of any conflict in the contract law for Pennsylvania and the other specified states
permits the Court to apply Pennsylvania law to all claims regardless of where the customer's
service was located.

designated for that purpose or (b) if available, through a Comcast

electronic order processing system designated for that purpose."

25.    As such, the unambiguous terms of the Agreement only permit Comcast to charge

an ETF when its Business Class Customer cancels his service within the Service Term he

specifically agreed to in the Service Order "submitted by Customer to Comcast …."  When

Comcast unilaterally opts to auto-renew a Business Class customer, there is no signed Service

Order.  Auto-renewed customers are not bound to a Service Term as defined by the T&C, but a

"Renewal Term," and the T&C does not specify an ETF can be charged for failing to complete a

Renewal Term.  Indeed, during the Renewal Term, Comcast can increase the charges for its

internet services on thirty days notice to the customer, and that customer can "cancel the

applicable Service without further liability."  Comcast T&C at §4.2.[3]  Therefore, Comcast cannot

impose an ETF upon Business Class Customers who cancel their service after fulfilling the

Service Term they had contracted for in the SOA.

26.    In addition, when Plaintiffs and other Business Class Customers requested

cancellation, Comcast issued a standard "Disconnect Request Form," which Comcast filled out

with the customers personal and account information, including the stop service date.  The

Disconnect Request Form states, in part, that "Pursuant to the General Terms and Conditions

(GTC) of my Comcast Service Agreement, I understand that I will be billed for 75% of the

balance remaining in the initial Commitment …" Then, Comcast states their calculated ETF.

Thus, Comcast violated its' own Agreement when it charged an ETF upon Business Class

Customers who had satisfied the "initial Commitment" included in the SOA, and who were in a

Renewal Term.

---

[3] See http://business.comcast.com/docs/ent-solutions-docs/bus-svcs-tcs-ver17-published-120531.pdf?sfvrsn=0, at p. 4, Section 4.2, As seen on November 30, 2012.

27.     Comcast's Disconnect Request Form is accompanied by a letter ("Disconnection Letter"), that makes clear the cancelling customer will be hit with an ETF, and failure to pay the ETF will result in collections activity, and adverse credit reporting:

> Should you choose to move forward with disconnecting your service, below are the required steps … "Early Termination Fees: Early Termination Fees (if applicable) are explained in the "Notes/Comments" section of your Comcast Service agreement and cover 75% of any remaining service charges.  Should Early Termination Fees apply, they will be added to your last bill and are due in full by the date listed on the bill.  In order to avoid any delinquent account collections and recovery efforts, as well as prevent adverse accounts being listed on your credit report, please ensure that the Early Termination Fee due Comcast is paid in full by the due date noted on your final bill."

28.     Notably, there is no Comcast document labeled a "Service agreement"; and neither the Service Order Agreement, nor the Terms and Conditions contain a "Notes/Comments" section as Comcast states in its Disconnection Letters.  Also, there is no mention of "Early Termination Fees" in the Service Order Agreement, and the ETF information contained in the T&C limits Comcast to imposing such fees only for a Service Term.

<u>Comcast Cannot Unilaterally Increase Internet Charges During a Service Term</u>

29.     As noted above, the costs of a Customer's internet service – including her equipment – is set forth in the SOA.  Among the line items is also an "equipment fee charge." That charge is also listed under the heading of "monthly recurring charge" on the SOA.  That is the charge for services the Customer agrees to pay when she executed the SOA.

30.     In December 2011, Comcast imposed a $7.00 (plus taxes) per month Internet Equipment Fee to its Business Class Customers receiving internet services.  For some customers, this was an entirely new fee, not included in the customer's SOA; for others it was a $2 increase from the amount specified in the SOA.

31.     As a justification for this fee increase Comcast explained on its website:

At Comcast, we strive to minimize passing expenses on to our customers. However, from time to time it is necessary to increase certain fees in order to keep pace with the costs of running our business . . . In the last several years, we have made significant upgrades to our network, customer equipment and software in order to provide a fast and reliable experience for our Business Class Customers.

32.     Upon information and belief, Comcast subsequently erased this explanation from its website.[4]

33.     Customers who were charged this increased internet equipment fee did not sign amendments, addendums, or new SOAs to permit this alteration of the prices set out in their SOAs.

34.     No part of the Agreement between Comcast and its Customers authorizes Comcast to unilaterally impose an increase in internet equipment fees during the Service Term without an amendment executed by both Comcast and the Business Class Customer being assessed the fee increase.

35.     Section 2.5 of the Terms and Conditions states that "maintenance" of Comcast equipment "shall be at Comcast's expense" except in cases of improper use of the equipment by customers.

36.     Section 3.1 of the T&C states that, "Except as otherwise indicated herein or on the applicable Service Order(s), monthly recurring charges for Video and Internet Services shall not increase during the initial Service Term."  The charge for Comcast equipment is listed by Comcast as a monthly charge both on the SOA, and on the bills of its Business Class Customers.

---

[4] See Bernd F. Laeschke, *Comcast: New $7 Equipment Fee for Business Internet Customers*, GEMINI (Jan. 3, 2012) http://www.ip-192.com/2012/01/03/comcast-equipment-fee (referencing the now unavailable Comcast statement).

As such, Comcast's equipment fee increase during the Service Term is inconsistent with the SOA and its T&C.

37.     In addition, Section 4.2 regarding "renewal," gives Comcast the right to "modify the charges for Internet and/or Video Services" but only "after the end of the initial Service Term."  Again, Comcast – by the terms of the contracts it wrote – is not permitted to unilaterally increase the internet equipment fee on its Customers who are still within their Service Term.

## PLAINTIFFS' EXPERIENCES

<u>Plaintiff Datascope Analytics</u>

38.     Plaintiff Datascope Analytics ("Datascope") signed a Business Class Service Order Agreement with Comcast in September of 2010. The Service Term was set for twelve months.

39.     Without warning, Comcast automatically renewed Plaintiff Datascope's service in September 2011 for another year.

40.     In January 2012, Mike Stringer, a partner with Datascope, acting as an agent on behalf of Datascope, called Comcast to change the location of Datascope's internet service because Datascope as the company was moving its office location.  Comcast required a new SOA, which Datascope signed for that new address. Shortly thereafter, Comcast informed Datascope that services were not available at the new Datascope office location because extensive and costly new wiring by Comcast would be necessary to provide the service.

41.     After learning that service was not available at the new Datascope location, Datascope requested that Comcast cancel Datascope's Business Class services at its old location. On March 22, 2012, Comcast issued Datascope a Disconnect Request Form, assessing a $450.00 early termination fee.  Datascope signed and objected to the ETF, and wrote "won't pay" next to

it.  Since Datascope's Service Term had been fulfilled, Datascope's partners objected to the ETF, and refused to pay it.

42.     Because Datascope refused to pay the ETF, Comcast continued to bill Datascope for Business Class services at its old location.

43.     In June 2012, Datascope emailed Comcast, requesting a credit for payments made after Datascope's initial cancellation request in January.  Comcast refused, and continued billing Datascope monthly for service.  Thereafter, Datascope refused to pay the monthly Comcast charges.  Datascope has since received communications from a collection agency attempting to collect money related to internet services provided through the end of Datascope's Renewal Term.

44.     Datascope's original SOA, executed in September 2010, permitted Comcast to charge an ETF during the Service Term only, which concluded in September 2011.  Yet Comcast threatened to impose an ETF for a cancellation during the Renewal Term.  Under the terms of its own contract, Comcast was not allowed to impose or threaten to impose the ETF after the expiration of the Service Term.

45.     But for the presence of the ETF charge, Datascope would have cancelled/disconnected its Comcast services in January of 2012, and not owed the $534.75 it was charged for continued service.

46.     As a result of the threatened ETF, Plaintiff has suffered injury in fact and has lost money and/or property as a result of the unlawful conduct alleged herein.

Plaintiff Hansen IP Law

47.     Plaintiff Hansen IP Law, LLC's ("Hansen IP") principal, Steve Hansen, signed a twenty-four month Business Class Service Order Agreement with Comcast in August 2009.  The

SOA did not permit Comcast to change its prices during the Term of Service.  The clear terms of the SOA and the accompanying Terms and Conditions state that the SOA and Terms and Conditions only apply for the period stated in the executed SOA, and an additional SOA would have to be executed before any changes in terms could become binding.

48.     Without warning, Comcast unilaterally and automatically renewed Hansen IP's Business Class service in August 2011 for one year.  Hansen terminated Hansen IP's Business Class phone service in November 2011.  Comcast charged Hansen IP the early termination fee of 75% of the remaining Renewal Term.  Hansen disputed these charges but ultimately paid the $337 early termination fee assessed for his Business Class voice service.  Hansen IP maintained its internet service.

49.     Hansen IP's original SOA, executed in August 2009, permitted Comcast to charge an ETF only if Hansen IP cancelled service during its Service Term, which concluded in August 2011.  Comcast imposed an ETF charge during the auto-renewal period following completion of the Service Term on Hansen's voice service.  Under the terms of its own contract, Comcast could not impose an ETF for service cancellation during the Renewal Term.

50.     Hansen IP has suffered injury in fact and has lost money and/or property as a result of the unlawful conduct alleged herein.


Plaintiff Robbie Simmons

51.     In April 2011, Plaintiff Simmons signed a Comcast Business Class Service Order Agreement with a Service Term of one year.  The April 2011 SOA did not permit Comcast to change its price for internet service during the Service Term.  The clear terms of the SOA and the accompanying Terms and Conditions state that the SOA and Terms and Conditions only

apply for the period stated in the executed SOA, and a new SOA would have to be executed before any changes in terms could become binding.

52.    The Service Order Agreement that Plaintiff signed with Comcast stated that the "total recurring monthly bill" was $64.95, which included a $5.00 monthly Internet Equipment Fee.  However, in or around December 2011, Plaintiff's monthly bill increased by $2.00 when Comcast increased its Internet Equipment Fee in violation of the SOA and Comcast's own Terms and Conditions.

53.    Comcast automatically renewed Plaintiff's Business Class services in April 2012.

54.    In May 2012, when Plaintiff moved from his residence, Plaintiff contacted Comcast to cancel his Business Class internet service.  Comcast issued Simmons a Disconnect Request Form on May 24, 2012, which included an ETF for 75% of the remaining balance ($487) on his Renewal Term.  Plaintiff was not aware Comcast had renewed his service, and continued to attempt to work with Comcast to cancel his service disconnected, without an ETF. Comcast refused to do so, and continued to bill Simmons for service at the property Simmons had already vacated.

55.    Simmons continued to dispute the validity of the ETF with Comcast for several months, and posted his complaints on Comcast's website.  On October 31, 2012, Comcast agreed to credit his account $280.72.  However, Comcast failed to reimburse Simmons for his service charges through June of 2012

56.    As a result, Plaintiff Simmons has suffered injury in fact and has lost money and/or property as a result of the unlawful conduct alleged herein.

## CLASS ACTION ALLEGATIONS

57.     This action has been brought, and may be properly maintained, under Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(2) and/or (3).

58.     Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of Classes (collectively referred to as "Nationwide Class") initially defined as follows:

**United States:**  all current and former Comcast Business Class customers (1) who were charged an Early Termination Fee, or were threatened with an Early Termination Fee charge, after the expiration of the terms of services specified in their Service Orders ("Service Term"), and/or (2) who, while still in their Service Terms, were charged Internet Equipment Fees higher than specified in their Service Orders.

59.     In the alternative, if the Court Finds that the law of the Pennsylvania should not be uniformly applied to the claims of the Nationwide Class, Plaintiffs bring this action on behalf of themselves and all others similarly situated as members of Classes (collectively referred to as "Individual State Classes") initially defined as follows:

**Illinois:**  all current and former Comcast Business Class customers in Illinois 1) who were charged an Early Termination Fee, or were threatened with an Early Termination Fee charge, after the expiration of the terms of services specified in their Service Orders ("Service Term") , and/or (2) who, while still in their Service Terms, were charged Internet Equipment Fees higher than specified in their Service Orders;

**Michigan:** all current and former Comcast Business Class customers in Michigan (1) who were charged an Early Termination Fee, or were threatened with an Early Termination Fee charge, after the expiration of the terms of services specified in their Service Orders ("Service Term"), and/or (2) who, while still in their Service Terms, were charged Internet Equipment Fees higher than specified in their Service Orders;

**Indiana:** all current and former Comcast Business Class customers in Indiana (1) who were charged an Early Termination Fee, or were threatened with an Early Termination Fee charge, after the expiration of the terms of services specified in their Service Orders ("Service Term"), and/or (2) who, while still in their Service Terms, were charged Internet Equipment Fees higher than specified in their Service Orders.

60.     Excluded from the proposed Nationwide Class or Individual State Classes are any entity in which Defendant has a controlling interest; any of Defendant's officers, directors, or employees; the legal representatives, heirs, successors, and assigns of Defendant; and any judge whom this case is assigned and his or her immediate family.

61.     <u>Numerosity</u>:  Fed. R. Civ. P. 23(a)(1):  The members of the Nationwide Class or the Individual State Classes are so numerous and widely dispersed that joinder of them in one action is impractical. Thousands of individuals subscribe to Comcast's Business Class service and Class members are likely to number in the tens of thousands. The precise numbers of Class members are unknown to Plaintiffs, but each Class member should be readily identifiable from information and records in Comcast's possession and control.

62.     <u>Existence and Predominance of Common Questions of Law and Fact:</u>  Fed. R.

Civ. P. 23(a)(2); 23(b)(2) and/or(3):  Common questions of law and fact exist as to all Class

members and predominate over any questions affecting only individual Class members. These

common legal and factual questions include, but are not limited to, the following:

        a.      Whether Comcast has a practice of imposing ETFs on Business Class

Customers who cancel their services during the auto-renewal period ("Renewal Term");

        b.      Whether the ETF Comcast imposes during the auto-renewal period is

valid;

        c.      Whether Comcast has a practice of increasing its Internet Equipment Fees

on its Business Class Customers during the Customers' Service Term;

        d.      Whether Comcast breached its service agreements when it increased the

Internet Equipment Fee in December 2011 on those Business Class Customers still within a

Service Term;

        e.      Whether Comcast's conduct as alleged herein constitutes a breach of

contract;

        f.      Whether Plaintiffs and Class members are entitled to damages, restitution,

injunctive relief and declaratory relief;

62.     <u>Typicality:</u>  Fed. R. Civ. P. 23(a)(3):  Plaintiffs' claims are typical of the claims of

the Nationwide Class or Individual State Classes as Plaintiffs' service were subject to an ETF,

and ETF Plaintiffs were each either charged the ETF for cancelling service in a Renewal Term,

or were threatened with its charge in order to maintain service for a Renewal Term.  In addition,

Plaintiffs Simmons was charged the December 2011 Internet equipment fee increase within the

period of his Service Term, contrary to the price included in his Service Order.  His claims are typical of Internet Fee Class members.

63. <u>Adequacy of Representation</u>: Fed. R. Civ. P. 23(a)(4):  Plaintiffs are adequate representatives of the Nationwide Class or Individual State Classes because their interests do not conflict with the interests of class members they seek to represent. Plaintiffs have retained competent and experienced class action counsel that intend to vigorously prosecute this action. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

64. <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class members is impracticable. Even if individual plaintiffs and other class members could afford individual litigation, such redundant individual litigation would expend judicial resources. The amount at stake for each consumer is such that individual litigation or arbitration would be inefficient and cost prohibitive. Additionally, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

### (Declaratory Relief Under 28 U.S.C. Sections 2201, *et. Seq.* – All Plaintiffs)

65.     Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this Complaint as if fully set forth herein.

66.     An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendant on the other, concerning their respective rights and duties. Plaintiffs contend, and Comcast denies, that:

      a.     Comcast cannot charge an ETF for its Business Class Customers who have completed their Service Term, and who seek to cancel their service within an auto-renewal time period, when no new Service Order Agreement has been executed by the customer;

      b.     Comcast cannot impose an Internet Equipment Fee increase on Plaintiffs and Class members during the Service Term set out in an executed Service Order Agreement without a written amendment;

67.     WHEREFORE, Plaintiffs request that this Court issue a declaration that pursuant to the terms of the Agreements between Plaintiffs and Defendant, Defendant is not entitled to charge an increased Equipment Fee during the Agreement term, or charge an ETF for its Business Class Customers who seek to cancel their service within their Renewal Term, along with such other and further relief as the Court may deem just and proper.

## APPLICATION OF PENNSYLVANIA LAW

67.     Plaintiffs Datascope Analytics LLC, Hansen IP, PLLC, and Robbie Simmons, ("Plaintiffs") on behalf of themselves and all others similarly situated, seek to apply Pennsylvania law to the greatest extent possible to the claims and issues raised herein.

68.     All of Defendant's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from Pennsylvania, where Defendant has its principal place of business.

69.     Accordingly, Pennsylvania has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members.

70.     Pennsylvania has a materially greater interest than any other State in regulating unlawful conduct by Comcast, which conducted its unlawful practices out of its principal place of business in Pennsylvania, and in enforcing the rights and remedies granted to United States consumers, including Pennsylvania residents, under the Pennsylvania laws invoked by this Complaint. These rights and remedies further strong fundamental public policies of the State of Pennsylvania.

71.     In addition, there is no material conflict between the contract law of Pennsylvania and that of Plaintiffs' home states (Illinois, Michigan, and Indiana), nor any other States.

## COUNT II

### (Breach of Contract – All Plaintiffs)

72.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein. This claim is brought by all Plaintiffs on behalf of themselves and all Class members.

73.     The elements of a breach of contract claim under the Pennsylvania common law are identical or substantially similar to the elements of a breach of contract claim under any of

the laws of the 50 states. As such, there is no conflict of law in applying Pennsylvania contract law to all of the Plaintiffs' claims.

74.     Defendant Comcast drafted the contents of the SOA and the Terms and Conditions. Although Comcast has expressly breached the clear terms of its Agreements with Plaintiffs, any ambiguity in the Comcast contracts should be interpreted against Comcast as the drafter.

75.     A breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract.

76.     Comcast breached its contract with Plaintiffs and Class members by charging or threatening to charge an ETF on Comcast Business Class customers who had finished their mutually agreed upon Service Term and were no longer under the Service Term set forth in a duly executed Service Order, but were auto-renewed by Comcast.

77.     Comcast also breached its contract with Plaintiff Robbie Simmons and similarly situated customers by unilaterally increasing the internet equipment fees assessed to customers during their Service Term.  The SOA and TOC require a written Amendment, signed by Customer and a Comcast Senior Vice President, before such a price increase could be imposed during a Service Term.

78.     Plaintiffs and Class members have suffered injury in fact and has lost money or property as a direct and proximate result of the unlawful conduct alleged herein.

## COUNT III

### (Violation of Illinois Common Law, Breach of Contract – Plaintiff Datascope)

80.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein. This claim is brought by Plaintiff Datascope Analytics LLC, on behalf of itself and a class of similarly

situated Business Class customers whose service occurred in Illinois ("Illinois Class"). Plaintiff Datascope Analytics LLC pleads this claim in the alternative should Plaintiffs' claim under Count II be dismissed.

79.     Defendant Comcast drafted the contents of the SOA and the Terms and Conditions. Although Comcast has expressly breached the clear terms of its Agreements with Plaintiffs, any ambiguity in the Comcast contracts should be interpreted against Comcast as the drafter.

80.     A breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract.

81.     Comcast breached its contract with Plaintiff Datascope and Class members by charging or threatening to charge an ETF on Comcast Business Class customers who had finished their mutually agreed upon Service Term and were no longer under the Service Term set forth in a duly executed Service Order, but were auto-renewed by Comcast.

82.     Plaintiff Datascope and Class members have suffered injury in fact and has lost money or property as a direct and proximate result of the unlawful conduct alleged herein.

## COUNT IV

**(Violation of Michigan Common Law, Breach of Contract – Plaintiff Hansen IP Law)**

83.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein. This claim is brought by Plaintiff Hansen IP Law, on behalf of itself and a class of similarly situated Business Class customers whose service occurred in Michigan ("Michigan Class"). Plaintiff Hansen IP Law pleads this claim in the alternative should Plaintiffs' claim under Count II be dismissed.

84.     Defendant Comcast drafted the contents of the SOA and the Terms and Conditions.  Although Comcast has expressly breached the clear terms of its Agreements with Plaintiff, any ambiguity in the Comcast contracts should be interpreted against Comcast as the drafter.

85.     A breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract.

86.     Comcast breached its contract with Plaintiff and Class members by charging or threatening to charge an ETF on Comcast Business Class customers who had finished their mutually agreed upon Service Term and were no longer under the Service Term set forth in a duly executed Service Order, but were auto-renewed by Comcast.

87.     Plaintiff and Class members have suffered injury in fact and has lost money or property as a direct and proximate result of the unlawful conduct alleged herein.

## COUNT V

**(Violation of Indiana Common Law, Breach of Contract – Plaintiff Simmons)**

88.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein. This claim is brought by Plaintiff Robbie Simmons and a class of similarly situated Business Class customers whose service occurred in Indiana ("Indiana Class"). Plaintiff Simmons pleads this claim in the alternative should Plaintiffs' claim under Count II be dismissed.

89.     Defendant Comcast drafted the contents of the SOA and the Terms and Conditions.  Although Comcast has expressly breached the clear terms of its Agreements with Plaintiff, any ambiguity in the Comcast contracts should be interpreted against Comcast as the drafter.

90.     A breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract.

91.     Comcast breached its contract with Plaintiff and Class members by charging or threatening to charge an ETF on Comcast Business Class customers who had finished their mutually agreed upon Service Term and were no longer under the Service Term set forth in a duly executed Service Order, but were auto-renewed by Comcast.

92.     Comcast also breached its contract with Plaintiff Simmons and Class members by increasing the equipment rental fees assessed to customers in violation of the SOA and Terms and Conditions, which require a written Amendment, signed by Customer and a Comcast Senior Vice President, before any terms of the SOA can be modified.

93.     Plaintiff Simmons and Class members have suffered injury in fact and has lost money or property as a direct and proximate result of the unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the proposed Nationwide Class, or in the alternative a Individual State Classes, as follows

A.      For an order certifying the proposed Nationwide Class or Individual State Classes herein under the Federal Rule of Civil Procedure 23(a), and 23(b)(2) or (b)(3) and appointing Plaintiffs and Interim Class Counsel to represent said Classes under Federal Rule of Civil Procedure 23(g);

B.      A declaration that Comcast is financially responsible for notifying Class members of the pendency of this suit;

C.      For an order requiring Comcast to: (1) end the practice of charging or threatening to charge ETFs on Business Class Customers who have finished the Service Term set out in their

SOA, who Comcast unilaterally auto-renewed; (2) end its collection efforts to obtain unpaid ETF's and other unlawful fees; (3) reverse all negative credit reports made to credit reporting agencies for failure to pay ETF's and other unlawful fees; (4) end the practice of increasing Internet Equipment Fees during the Service Term of Business Class Customers; and (5) refund all Business Class Customers who have been improperly charged the ETF's or increased Internet Equipment Fee.

D.      Monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowed by law;

E.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

F.      For an order awarding Plaintiffs and Class Members the reasonable costs and expenses of suit, including their attorneys' fees; and

G.      For any further relief that the Court may deem appropriate.


## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

Dated: February 1, 2013                    Respectfully submitted,

Gary L. Azorsky (PA Atty. ID: 38924)
**COHEN MILSTEIN SELLERS &**
**TOLL, PLLC**
3 Logan Square
1717 Arch Street, Suite 3610
Philadelphia, PA 19103
gazorsky@cohenmilstein.com
Telephone: (267) 479-5702
Facsimile: (267) 479-5701

Andrew N. Friedman
Douglas J. McNamara
**COHEN MILSTEIN SELLERS &**
**TOLL, PLLC**
1100 New York Avenue, NW
Suite 500 – West Tower
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Angela Edwards
**LAW OFFICE OF ANGELA EDWARDS**
72 Canterbury Circle
East Longmeadow, MA 01028
Telephone: (413) 525-3820
Facsimile: (413) 525-3820

*Counsel for Plaintiffs*

1660375v1